```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
                        FORT WORTH DIVISION
```

| | |
|---|---|
| LINDA D. THORNTON | § |
| | § |
| VS. | § CIVIL ACTION NO. 4:04-CV-602-Y |
| | § |
| FORT DEARBORN LIFE INSURANCE | § |
| COMPANY | § |

### ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT[1]

Pending before the Court is plaintiff Linda D. Thornton ("Plaintiff")'s Motion for Summary Judgment [doc. # 21], filed March 29, 2005, and defendant Fort Dearborn Life Insurance Company ("Dearborn")'s Motion for Summary Judgment [doc. # 32], filed May 23. Having carefully reviewed the necessary documents, the Court concludes that Thornton's motion should be DENIED and that Dearborn's motion should be GRANTED.

In 1995 Plaintiff and her husband, Michael Thornton ("Thornton"), formed DrainPro Plumbing, Inc. ("DrainPro"), a company that provided residential plumbing services. In 2003 DrainPro had one other employee.

On July 29, 2003, Thornton elected to undergo hospice care following unsuccessful chemotherapy and radiation treatment for lung cancer. In August Thornton applied for disability benefits with the Social Security Administration, which found Thornton to be disabled as of June 1, 2003, and thus entitled to disability benefits as of November 2003. (Def.'s App. at 80 (Letter from

---

[1] While Defendant filed its responsive brief and appendix under seal, Plaintiff did not file any of her documents under seal. Because the cause relates to Plaintiff's husband's privacy, and since Plaintiff did not make any of her filings under seal, the Court is not sealing this order.

Social Security Administration).) On October 31, 2003, continuous care was added to the hospice care Thornton already received.

Thornton performed his last plumbing work for DrainPro in September 2003; at that time he also began liquidating the company. DrainPro ceased providing plumbing services in October 2003, and its final paychecks to its employees were issued in that same month.

Sometime prior to November 2003 DrainPro's insurance company, Pacificare, informed the company that it was terminating DrainPro's group-health-insurance coverage for small-employer groups. Plaintiff signed an application for small-group employer insurance with Dearborn on October 16, 2003. On that same date Thornton signed an enrollment form for coverage with Dearborn. Thornton indicated in that form that he was an "employee only" of DrainPro, as a plumber, for $55,700.00 a year for thirty hours of work weekly. The Thorntons also had an individual life-insurance policy with Dearborn for Thornton.

Subsequently, Dearborn issued group-insurance coverage ("the group policy") to DrainPro, effective November 1, 2003.[2] The group policy provided that:

> [i]n any instance when an Employee is not Actively at Work on the date his insurance would otherwise become effective, the insurance shall become effective on the date following the first day he is again Actively at Work.

---

[2] While the group policy adduced has no identifying information on it, both parties offered the same policy. The Court will therefore accept the policies adduced as the group policy.

2

(*Id.* at 290 (Group Policy).)  An "Employee"

> means a person who regularly provides personal services at the Employee's usual and customary place of employment with the Employer for not less than 120 hours per month in the business of the employer, and who is duly recorded as such on the payroll records of the Employer and is compensated for such services by salary or wages; except that proprietors, partners, corporate officers and directors need not be compensated for such services by salary or wages.

(*Id.* at 288 (same).)  An employee is only "Actively at Work" when he is engaged in

> the active expenditure of time and energy in the services of the Employer at the Employee's usual and customary place of employment by an Employee who is physically and mentally capable of performing on a regular basis all of the usual and customary duties required for his position; provided, however, that an Employee shall be deemed to be so actively expending time and energy on each day of a regular paid vacation, or on a regular nonworking day, on which he is not disabled, provided he was so actively expending time and energy on the last scheduled working day preceding such vacation or nonworking day.

(*Id.*)

November 1, 2003, was a Saturday.  Thornton died the following day, on November 2.  In December Plaintiff submitted claims for benefits from Dearborn under the group policy and Thornton's individual life-insurance policy.  On the individual life-insurance-policy claim Plaintiff indicated that Thornton was a plumber who last worked in September 2003; on the group-policy claim she indicated that Thornton's last day of full-time, active work was November 2, 2003.  (Def.'s App. at 88-89 (claim forms).)

On July 12, 2004, Dearborn denied Plaintiff's claim under the group policy because there were insufficient medical records to

3

substantiate Plaintiff's claim and to establish that Thornton was actively at work on the date his coverage began, November 1, 2003. (*Id.* at 309-10 (denial letter).)  Plaintiff filed suit in state court on July 14, 2004, asserting claims for breach of contract, deceptive trade practices, insurance-code violations, breach of the covenant of good faith and fair dealing, exemplary damages, and attorney's fees.  (Orig. Pet.)  Since that time Plaintiff has indicated that she is abandoning all of her claims save her breach-of-contract claim and her claim for attorney's fees.  (Def.'s Br. Summ. J. at 13-14.)[3]  Dearborn removed the cause to this Court on August 19.

Summary judgment is proper when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).  Facts are considered "material" if they "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material.

---

[3] Plaintiff apparently made that statement in her May 12, 2005, deposition. Plaintiff has never filed a motion to dismiss her other claims.  On February 3, 2006, the Court ordered Plaintiff to file a motion to dismiss the claims she abandoned in 2005.

4

*Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Id.; Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994). Further, the Court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

To prevail on a motion for summary judgment, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). A moving party may submit evidence that negates a material element of the respondent's claim or defense or show that there is

5

no evidence to support an essential element of the respondent's claim or defense. *See Celotex Corp.*, 477 U.S. at 322-24; *Crescent Towing and Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994); *Lavespere*, 910 F.2d at 178.

To negate a material element of the respondent's claim or defense, a moving party must negate an element that would affect the outcome of the action. *See Anderson*, 477 U.S. at 247. If the moving party alleges that there is no evidence to support an essential element of the respondent's claim or defense, the moving party need not produce evidence showing the absence of a genuine issue of fact on that essential element. Rather, the moving party need only show that the respondent, who bears the burden of proof, has adduced no evidence to support an essential element of his case. *See Celotex*, 477 U.S. at 325; *Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir. 1988).

When the moving party has carried its summary-judgment burden, the respondent must go beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial. *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* FED. R. CIV. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not

6

significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50.

Dearborn correctly points out that, as a material element of Plaintiff's claim, she must demonstrate that Thornton met all conditions precedent to coverage, including that he was "actively at work" on the first day that the group policy was eligible to become effective. As stated above, the first possible effective date for the group policy was November 1, 2003.

Dearborn argues that Thornton could not have been actively engaged in work on November 1, 2003, because he was disabled as of that date and was incapable of expending time and energy or was physically incapable of performing plumbing duties on that date. Plaintiff contends that Thornton was actively at work on November 1 because Saturdays were regular work days for DrainPro and because Thornton worked all day, beginning at 7:30 a.m., on liquidating the business.

The evidence does not support Plaintiff's contention. The record reflects that on November 1 Thornton was under 24-hour hospice care, spent much of the day in his hospital bed receiving oxygen and pain medication, appeared to be in pain for at least half of the day, and was incapable of performing plumbing services. (Def.'s App. at 99-104 (nurse deposition).) While Thornton did make some phone calls regarding DrainPro and expended some time liquidating the business, those functions would not qualify as "active work" under the group policy, which requires "the active expenditure of time and energy . . . by an Employee who is

7

physically and mentally capable of performing on a regular basis all of the usual and customary duties required for his position. . . . [and who] is not disabled." (*Id.* at 288 (Group Policy).) Plaintiff has presented no evidence controverting that Thornton was legally disabled on November 1, 2003, as indicated by the Social Security Administration's finding of disability beginning June 1, or that he was incapable of performing plumbing services. Plaintiff's evidence that Thornton was busy liquidating DrainPro on November 1 is unavailing because liquidation efforts do not constitute "the usual and customary duties required" for a plumber, or even "the usual and customary duties required" of a DrainPro employee.

Given the evidence adduced, the Court cannot conclude that there is any genuine issue of material fact remaining as to whether Thornton was actively engaged in work on the first day that the group policy was eligible to become effective.[4] Consequently, the Court must conclude that the group policy was not yet effective on the date of Thornton's death. Summary judgment in Dearborn's favor is therefore appropriate.

It follows that Thornton's Motion for Summary Judgment [doc. # 21] must be, and is, DENIED, and that Dearborn's Motion for

---

[4] Though Plaintiff has offered a scintilla of evidence that Thornton worked on November 1, 2003, that evidence cannot create a genuine issue of fact given all of the other evidence already referenced by the Court and substantiated by the summary-judgment record. *See Little*, 37 F.3d at 1075 (stating that, where a moving party has carried its summary-judgment burden, the respondent does not establish that there is a genuine issue for trial simply by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence).

8

Summary Judgment [doc. # 32] must be, and is, GRANTED.  Thornton's breach-of-contract claim and claim for attorneys fees are hereby DISMISSED WITH PREJUDICE.

    SIGNED February 22, 2006.

                                                    /s/ Terry R. Means
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE